## Thomas Rowland *vs.* Ellis Doty and others.

It is a general rule, that where the bill prays relief to which the complainant is entitled, and which cannot be had at law, it is sufficient to give the court of chancery jurisdiction of the cause.

The 29th section of the act of 1833, (laws of Michigan, page 358,) gives this court express authority to inquire into and settle conflicting claims of title to land.

The right to sell lands for taxes, under the act of 1827, (laws of Michigan, page 377,) is founded on the fact of the non-payment of the tax, and a sale made, after the tax has been paid, is unauthorized, and the treasurer's deed on such sale conveys no estate or title whatever.

The collector's return that the tax has not been paid, is such evidence *only* of non-payment as to justify the treasurer in selling; and the treasurer's deed on such sale is "conclusive evidence" *only* of the fact that the sale by *him* was *regular* according to the provisions of the act.

A party claiming to have paid the tax before sale, is not precluded by the treasurer's deed, but may go behind it and show that fact.

First Circuit.

Rowland
*vs.*
Doty.

The bill in this case set forth and alledged that Thomas Rowland was, in the year 1822, owner in fee simple, of lot number 59, *in section number 8*, in the city of Detroit; that he continued the owner and possessor of said lot up to the time of the filing of the bill, and made permanent improvements on the same to the value of $1,000. That all the township and county taxes assessed on said lot had been paid by him from the year 1822, up to the time of filing the bill. That a few days before the filing of the bill, he was informed for the first time, that Peter Desnoyers, the former treasurer of the county of Wayne, pretended to sell said lot on the third day of October, 1831, for the taxes pretended to be due thereon for the year 1828, to one Rufus Wilson. In the year 1833, one David French, (who was the successor to Desnoyers in the office of treasurer of said county,) executed a fee simple conveyance of said lot to said Wilson and acknowledged the same according to law. Wilson conveyed to Ellis Doty, and Doty had applied to Theodore Williams, register in the city of Detroit, to have the deed from French to Wilson, recorded.

The bill further stated, that Rowland had paid the taxes on said lot for the year 1828, and that he then held, in his possession, the receipt of Abraham C. Canniff, bearing date October

First Circuit. 21, 1828, by which said Canniff, who was then collector for the
Rowland
vs.
Doty.
township and city of Detroit, acknowledged to have received from Rowland, the sum of $21 71, being the amount of Rowland's county tax for said county for the year 1828, and also the further sum of $6 78, being the amount of the township and city tax for said year.

The bill further alledged, that Rowland, being in possession of said lot, was unable to divest said Doty of his pretended title to the same by an action of ejectment or any other process of law whatever, and prayed that the deed from French to Wilson might be decreed to be given up to be cancelled, as also all pretended conveyances from Wilson to Doty, and that said Wilson and Doty assign all their supposed right to said lot to Rowland; and also prayed for an injunction to restrain Wilson and Doty from incurbing the title to said lot, and to restrain Williams from recording said deed.

The bill was taken as confessed as against all the defendants except Wilson, who answered and disclaimed, and Doty, who demurred. A motion was also made to dissolve the injunction for want of equity.

A. D. FRAZER, in support of the demurrer and motion to dissolve.

It is urged by the defendant that the injunction in this case be dissolved for want of equity in the bill, in as much as the complainant has full and adequate remedy at law, and no ground is suggested in the bill to give this court jurisdiction.

The legality or validity of the treasurer's deed is the question necessarily raised in this case. It is, therefore, properly examinable at law. Whether the requirements of the act to provide for the assessment and collection of taxes have been complied with, and how far it is necessary for the defendant to show compliance, are questions depending upon the statute, (See Laws of 1827, page 377,) and to be adjudicated in an action of ejectment.

Where a cause depends simply on the solution of a legal question, the proper *forum* for the determination of that question, is a court of law; nor will this court interfere in a mat-

ter where relief can be had either by *quo warranto* or *manda-*
mus. (*Attorney General* vs. *Utica Ins. Co.*, 2 *J. C. R.*, 376; 20
*Ves.* 199.)

W. Woodbridge, contra.

· The demurrer concedes all the facts stated, consequently that the proprietor was a resident proprietor, and that the property was assessed as the property of a *non-resident*, as well as the irregularity charged.

The mode of collecting a tax from a non-resident is varient from that prescribed for a resident. In the latter case the collector must proceed by distress upon the personal property; in the former case the tax can only be enforced by sale of the land.

It is *legally impossible* that the land of a resident proprietor should be sold and thus lost, if there were personal property upon which distress might be made; and the sworn return of the collector is the only evidence there could be that there was no personal property. Thus bringing this case almost within the very words of the case of *Cox* vs. *Grant*, 1 *Yates*, 165, and also of *Stead* vs. *Course*, 4 *Cranch*, 413, 414.

In order to give effect to a collector's deed, every minute particular of the statute must have been shown to have been complied with. (1 *Yates*, 300; *Chip. R.* 81; 4 *Munf.*, 434.)

A collector has no *general* authority to sell lands at his *discretion;* but a special naked power to sell in *certain specified* events; and the *pre-requisites* must *precede* the deed. The validity of the deed then finally depends upon matter in *pais*, and this matter *must be shown.* (*Williams* vs. *Payton*, 4 *Wheat.*, 79, 80.)

If the lots are not assessed in the name of the true owner, for example, the *sale is void.* (8 *Wheat.*, 683, 684; 1 *Munf.*, 423.) The lots must be definitely and properly described. (4 *Peters*, 362, 363, 364;) or the sale is void. (*Vide* 3 *Ohio Rep.*, 233, 234.) In the case of *Thompson* vs. *Gardner*, 10 *John. R.*, 405, the court say: "It would be *an alarming* doctrine to say that the collector might *sue* immediately every person upon his assessment roll." It would be far more alarm-

ing if he could sell all a man's farm without suit, at his discretion, and without a regular assessment, advertisement, &c.

The contrary is the law; even the excess of *five cents* in the whole amount of a tax list, vitiates the whole proceedings and the collector is a trespasser. (2 *Greenleaf Rep.*, 375.) "For if the strict rule of the law be overleaped there is no limit."

The Virginia statute provides that if the tax on land remains unpaid three years, the title thereof shall vest in the state; by a separate provision the collector is required to distrain if there be personal property, and he is required to return to the county court a report, *sworn to*, of his proceedings; yet a sale by the state is utterly void unless the officer or purchaser prove fully all the proceedings; distress, advertisement, assessment, description, ownership and sale; otherwise, says Judge Tucker, it would be against the principle of *Magna Charta*. (2 *Hen. & Munf.*, 328.)

Not only is a *literal* and *exact* compliance with the statutory provisions requisite, but the statute itself receives a very *strict* construction. (9 *Cranch*, 67; *Parker* vs. *Rule*, 8 *Wheat.*, 682; 5 *Ohio Rep.*, 369; 4 *Munf.*, 431.)

The claim of the defendants being thus bad at law, the complainant has a full right to come into chancery *to have the invalid deed cancelled*, and the doubts thrown upon his title removed and that title quieted; things which a law court *cannot do*.

This case is not distinguishable from that of *Yancey vs. Hopkins*, 1 *Munf.*, 419, 426, 428. The assessment was in that case found to be irregular, and a cancelling of the collector's deed, and also a re-conveyance by release were decreed. Nor can this case be distinguished from the case of the *Corporation of Washington* (*on appeal*) vs. *Pratt*, 8 *Wheat.*, 682. There had in that case been an *irregular* assessment, and the city lots had been actually sold for taxes. Pratt brought his bill against the corporation, and averred the irregularity of the assessment and proceedings, and prayed an injunction. The sale was declared void, and the city of Washington perpetually enjoined against issuing a deed to the purchaser.

This case is strikingly similar in its features to the case of Burnett vs. Cincinnati, 3 Ohio Rep., 86. In that case, likewise, there was an irregular assessment, and the tax not being paid, the collector was about proceeding to *sell* for the tax, when the complainant obtained an injunction. The decree of the court was a perpetual injunction against the threatened sale.

In all these three leading cases, the point of jurisdiction was either made, debated and overruled, or else made and (as in 8 *Wheat.*, 682) given up by counsel. (*See also*, 5 *Ohio Rep.*, 679; 2 *Paige*, 436.)

THE CHANCELLOR. The first question that arises in this case is, as to the jurisdiction of this court.

As a general rule, where the bill prays relief, to which the complainant is entitled, and which cannot be had at law, it is sufficient to give this court jurisdiction of the cause.

The bill in this case, after stating that the complainant had paid the tax for which the lot was sold, and being in possession, was unable to divest Doty of his pretended title to the lot by action of ejectment, or any other process at law whatever, prays that the deed from French to Wilson may be delivered up to be cancelled, as also the conveyance from Wilson to Doty. It also prays that Wilson and Doty may be compelled to assign their claim to the complainant, and for an injunction to restrain them from incumbering the title to the lot, and to restrain Williams from recording the deed from French to Wilson.

Is it competent for this court to afford any part of the relief prayed. Most surely it is.

The jurisdiction of this court, (exclusive of any statutory provision upon the subject,) to set aside deeds and other legal instruments which are a cloud upon the title to real estate, and to order them to be delivered up to be cancelled, is fully established. *Petit* vs. *Shepard*, 5 *Paige*, 493; *Hamilton* vs. *Cummings*, 1 *J. C. R.*, 517; *Apthorp* vs. *Comstock*, 2 *Paige*, 482; *Grover* vs. *Hugell*, 3 *Russ. Ch. Reports*, 432; *Ward* vs. *Ward*, 2 *Hayw. R.*, 226; *Leigh* vs. *Everharts Ex'rs*, 4 *Munro R.*, 380; *Hamkshaw* vs. *Parkins*, 2 *Swanst. R.*, 546, 1 *Munf. R.*, 419;

*Burnett* vs. *Corporation of Cincinnati*, 3 *Ohio R.*, 87; *Mitford's Pl.*, 87; and there can be no question that there is sufficient stated in the bill to bring the case within the jurisdiction of this court.

But the act to prescribe the mode of proceeding in chancery of 1833, (*laws of Michigan*, 358, *sec.* 29,) provides " that any person having the possession and *legal title* to land, may institute a suit against any other person or persons setting up a claim thereto; and if the claimant shall be able to substantiate his title to such land, the defendant shall be decreed to release to the complainant all claim thereto, and to pay the costs," &c., and the bill in this case is framed to come within the provisions of this section.

The facts set forth in the bill are admitted by the demurrer.

The question then is, does the treasurer's deed to Wilson, divest Rowland of his title; and is Rowland precluded by that deed from showing that the tax had been paid for which the lot was sold?

By the 13th section of the "act to provide for the assessment and collection of township and county taxes," (*Laws of* 1827, *page* 370,) the tax is declared to be a *lien* on the land; and if such tax is *not paid* within a certain time, the treasurer is authorized to sell. The *right to sell* is, therefore, founded on the fact of the non-payment of the tax. If the tax be paid before the sale, that lien is discharged, and the right to sell no longer exists.

But it is said the treasurer's deed is conclusive upon this point.

The 14th section of the act provides, "that the treasurer shall, at the expiration of the said two years, execute to the purchaser, his heirs or assigns, a conveyance of the lands so sold, which conveyance shall vest in the person or persons to whom it shall be given an *absolute estate in fee simple*, subject to all the claims which the territory of Michigan shall have thereon, and the said conveyance shall be *conclusive evi-*

*dence*, that the sale was regular according to the provisions of this act."

The conveyance from the treasurer vests an "absolute estate in fee simple" *only* where the proceedings throughout have been regular. The right to sell being founded solely on the non-payment of the tax, does not, and cannot exist whenever the tax has been paid. A sale therefore, when no tax is in fact due, is unauthorized, and the treasurer's deed on such unauthorized sale, conveys no estate or title whatever.

The return by the collector that the tax has not been paid, is such evidence of non-payment *only* as to justify the treasurer in selling; and his conveyance on such sale is *not* "conclusive evidence" that all the pre-requisites have been complied with, but is only *conclusive evidence* that the *sale by him was regular* according to the provisions of the act.

And this was the construction given to the New York statute (which was substantially the same as ours) in the case of *Jackson vs. Morris*, 18 *Johns. Rep.*, 441.

Could the legislature have intended that a party who had performed all his duties to the public, should be deprived of his property in this way? Was it not intended to operate upon those who should not pay their taxes, and not upon those who have, and thus have performed all their obligations? The obligation is reciprocal: if the citizen performs his duties to the government, the government should perform its duties to him. Among the first of these is protection in his property; it should not be taken from him by the government or its agents without any fault or omission of duty on his part.

It is provided by the statute of Ohio, that "the deed made by the county auditor, as *hereinbefore specified*, shall be received in all courts as *prima facia* evidence of a good and valid *title* in the purchaser," &c.

In the case of the *Lessees of Carlisle vs. Longworth*, 5 *Ohio R.*, 374, the supreme court say: "the legislature do not say *a* deed made by the county auditor 'shall be received as *prima facia* evidence of a good and valid title,' but *the deed 'as hereinbefore specified*,' in other words, the deed made by the auditor

First Circuit. in pursuance of this act. This is the manifest intention. Un-

Rowland less it is made in pursuance of the act, it is made without au-
*vs.*
Doty. thority and is void; but if made in pursuance of the act, it is *prima facia* evidence of title." And in this case it was held that before the auditor's deed could be received in evidence, it must be shown that he had authority to make it.

In the case of *Steads Ex'rs* vs. *Course*, 4 *Cranch R.*, 403, it was decided that it was incumbent on the *vendee to prove the authority to sell.*

Chief Justice Marshall, in delivering the opinion of the court in that case, says: "It would be going too far to say that a collector selling land with or without authority, could, by his conveyance, transfer the title of the rightful proprietor."

In *Rules, Lessees* vs. *Parker*, 1 *Cooke R.*, 365, it was held that the sale of lands for the payment of taxes being a summary and extraordinary proceeding, the party claiming title under such proceeding, must show that all the requisites that the law had prescribed to guard against frauds and imposition have been complied with.

And in the case of *Williams* vs. *Peyton's Lessees*, 4 *Wheat. R.*, 77, the court say, that where there is a naked power not coupled with an interest, every pre-requisite to the exercise of that power should precede it; and that where lands are sold for the non-payment of taxes, the marshal's deed is not even *prima facia* evidence that the pre-requisites of the law have been complied with; but the party claiming under it, must show positively that they have been complied with.

These cases show what the general rule is upon this subject.

It is not necessary in this case to decide whether it is incumbent on the party claiming title under the treasurer's deed to show affirmatively the regularity of the proceedings, and that all the pre-requisites to the sale have been complied with.

The complainant alledges in his bill that the tax for which the lot was sold, had been paid long before the sale, and it would be a monstrous doctrine for this court to hold that he

is precluded by the treasurer's deed, and cannot go behind it to show that fact.

The demurrer must be overruled, and the motion to dissolve the injunction, denied.