MIRIAM E. MOORE

*vs.*

SAMUEL W. DARBY *et al.*

THOMAS H. MOORE, Intervenor.

Kent, Sept. T., 1889.

*Married women; proceeds of sale in partition of lands of tenants in common.*

A woman's share as tenant in common in the proceeds of lands, the right to the possession of which vested in her after the passage of the Married Woman's Acts, and which have been sold under direction of court for partition, will not, at the request of her husband, be invested for his benefit, but it will be paid to her absolutely.

SUIT FOR PARTITION OF CERTAIN REAL ESTATE.—On intervening petition by the husband of one of the co-owners to have her share of the proceeds of sale invested for his benefit. The facts are stated in the opinion.

*Nathaniel B. Smithers, Sr.,* for the intervenor.

*Richard R. Kenney* and *Edward Ridgely, contra:*

The question in this case involves the construction of the several statutes in this State enacted for the benefit of married women, and these statutes are to be found in Delaware Laws, vol. 12, page 663, passed in 1865; Del. Laws, vol. 14, pages 95 and 638, passed March 1871 and 1873, respectively; Delaware Laws, vol. 15, page 289, passed 1875, and page 601, passed in 1877; Del. Laws, vol. 16, page 188, passed in 1879; Del. Laws, vol. 17, page 911, passed in 1883.

These statutes (Married Woman's Acts) are remedial

13

statutes and should be so construed as to advance the remedy and effect the object intended to be accomplished by the Legislature. *Billings* v. *Baker*, 28 Barb. 343; *Johnes* v. *Johnes*, 3 Dow. 15.

By these statutes it is enacted that the real and personal property of a married woman "shall be her sole and separate property, and the rents, issues, and profits. thereof shall not be subject to the disposal of her husband nor liable for his debts."

The effect of these statutes has been to abolish entirely the right of a tenant by the curtesy initiate. The husband has and can have no right, property, or interest whatever in his wife's real estate during coverture, and has no seisin thereof, as during coverture he cannot come at the possession or the rent and profit. He has under the statutes a possibility or chance of being tenant by the curtesy in the wife's lands in the event. that he survives his wife and has by her issue born alive during coverture, capable of inheriting the estate and the wife being seised of the lands at the time of her death.

As the law now stands in our State, the right of the husband to be tenant by the curtesy in his wife's lands. is dependent upon the fact not only that the issue should be born alive during coverture, but also that the wife should be seised of the lands at the time of her death.

Any alienation of the lands during the life of the wife must necessarily defeat the right of tenancy by the curtesy in the husband. *Gram* v. *Lobdale*, decided in the Court of Errors and Appeals in this State at the January Term A. D. 1881 (not yet reported); *Breeding* v. *Davis*, 77 Va. 639; *Beach* v. *Miller*, 51 Ill. 206; *Hill* v. *Chambers*, 30 Mich. 422; *Sleight* v. *Read*, 18 Barb. 159; *Billings* v. *Baker*, 28 Barb. 343; *Pool* v. *Blakie*, 53 Ill. 495; *Forbes* v. *Sweesy*, 8 Neb. 520; *Coverdale* v. *Gorman*,

4 Houst. (Del.) 624; *Johnes* v. *Johnes*, 3 Dow. 15; *Stewart* v. *Ross*, 50 Miss. 776; *Greenwich Nat. Bank* v. *Hall*, 11 R. I. 124; *Silsby* v. *Bullock*, 10 Allen, 94; *Porch* v. *Fries*, 18 N. J. Eq. 205; *Hearle* v. *Greenbank*, 3 Atk. 695–716.

In the case before the court Mrs. Miriam E. Moore, wife of Thomas H. Moore, was tenant in common with her two brothers Samuel W. Darby and John C. Darby, and proceedings in partition were instituted by Mrs. Moore in her own name. By the return of the freeholders it appeared that the lands held by the tenants in common could not be divided without detriment to the parties interested, and the lands were sold by order of the chancellor, and converted into money, in accordance with the provision of section 14, chapter 86, page 530, Revised Code (1873). By these proceedings all the title and interest of Mrs. Moore in the lands were sold and alienated, and she no longer had any interest in these lands, but became entitled to her share of the purchase money —it was a conversion out and out of realty into personalty and the estate and interest of Mrs. Moore in the lands was thereby divested.

Since the passage of the Married Woman's Act in this State in 1865, more than twenty-four years ago, cases like the present have often occurred and the practice, so far as practice can, has established the right of the wife absolutely to the money, independent of her husband. The husband is not now under our practice made a party to the proceedings, and the court of chancery has uniformly since 1865 ordered the money to be paid to the wife. Prior to the Married Woman's Law when lands were sold it was considered a conversion into personalty, and the money was paid to the husband, but since the Married Woman's Law, the money has been paid directly to the wife.

Dower is certainly as much favored in our courts as curtesy, and yet, since the organization of our state government, it is confidently believed that in proceedings in partition no precedent can be found where one of the tenants in common, being a married man and his wife living, one third of his interest in the lands has been invested or withheld from him so as to await the event of his death, leaving the wife surviving him.

Dower is certainly extinguished by these proceedings if both husband and wife are living at the time, and why not curtesy?

Since the Married Woman's Law, the husband can have no more interest in the wife's lands than the wife has in his lands,—in fact not so much,—because the right of dower is superior to any liens which the husband may create during coverture; whereas the right of curtesy is subject to any lien made and created by the wife during coverture.

In the present case S. W. Darby and John C. Darby are both married men with wives living, and yet no one will pretend that one third of their share of the purchase money should have been invested to await the event of their wives outliving them.

It may be pretended that dower is a mere right and curtesy an interest in lands. Such may have been the distinction before the laws for the benefit of married women were enacted. But since then, dower and curtesy are exactly alike, except that dower is preferred to liens created by the husband during coverture, while curtesy is not. Both now are but a right and neither tenant in dower nor tenant in curtesy have an interest until the death of the husband or the death of the wife.

Suppose a farm belonged to the wife which has been purchased by her during coverture, and for which she gave a purchase money mortgage in which her husband

did not join, and the farm is afterwards sold on this mortgage and brings $5,000, above paying the mortgage —will it be pretended that the sheriff, to whom the whole purchase money is paid, is not bound to pay the balance of the money, after paying the mortgage (there being no other lien) to the wife, the husband and wife both being living at the time ? If not in that case, how can the wife be prevented from having her share in the present case?

To withhold this money from Mrs. Moore would be a virtual repeal of the Acts passed for the benefit of married women in all cases where a married woman was a joint tenant or tenant in common with other parties, and where proceedings were instituted for partition. It would deprive her of the control and management of this money so long as her husband lived. By the sale under the order of the court it became absolutely personal property, to which she, under the Married Woman's Law, is absolutely entitled. Before the passage of these laws it was always considered personal property and was invariably paid to the husband absolutely. But since the enactment of these laws it became and was the absolute property of the wife, for her to dispose of as she might deem proper.

Both reason and justice require that such an interpretation should be given to these statutes as to carry out their spirit and intention, and to accomplish the end intended by the Legislature—and if so interpreted will give to Mrs. Moore absolutely her share of the proceeds of the lands held by the tenants in common, after deducting therefrom the liens to which her share may be subject.

THE CHANCELLOR.—Miriam E. Moore has filed her petition in this court, praying for partition between her and her two brothers, Samuel W. Darby and John C. Darby, of lands situate in Mispillion and South Murderkill Hun-

dreds, formerly belonging to Samuel Warren, senior. One of these tracts of land contains about 700 acres; one other contains something over 200 acres, and a third tract contains upwards of 180 acres.

Samuel Warren, senior, died in 1848. By his will, admitted to probate November 6, 1848, he devised as follows:

"*Fourth.* I give and devise to my beloved wife, Miriam, for and during the term of her natural life, without impeachment of waste, all that farm or tract of land with the appurtenances situate in Mispillion Hundred, Kent County, and State of Delaware, being the Mansion Farm on which Solomon Townsend, senior, and Solomon Townsend, junior, lived and died, and now in the tenure of Abner Wooters, and containing six hundred acres more or less; and from and immediately after the death of my said wife, I give and devise the said farm or tract of land, with the appurtenances unto Solomon Townsend Warren and John W. Hall and their heirs for and during the natural life of my daughter Mary Darby, now the wife of John M. Darby, upon trust, to receive the rents and profits thereof and to pay the same to my said daughter Mary during her natural life, for her sole and separate use, notwithstanding her coverture, free from the debts, management, power, and control of her now husband the said John M. Darby, or of any other husband by her hereafter to be taken, and the receipt of the said Mary alone from time to time to be a sufficient discharge and after the death of my said daughter, I give and devise the farm or tract of land aforesaid with the appurtenances unto the heirs of my said daughter Mary in fee simple absolute, clear and discharged from the trust aforesaid.

"*Fifth.* I give and devise unto Solomon Townsend Warren and John W. Hall and their heirs for and during

the natural life of my daughter Mary Darby, now the wife of John M. Darby, the farm or tract of land which I purchased of Dr. Alexander Lowber near Frederica containing five hundred acres more or less with the appurtenances upon trust, to receive the rents and profits thereof and to pay the same to my said daughter Mary during her natural life, for her sole and separate use, notwithstanding her coverture, free from the debts, management, power, or control of her now husband the said John M. Darby, or of any other husband by her hereafter to be taken, and the receipt of the said Mary alone from time to time to be a sufficient discharge. And after the death of my said daughter, I give and devise the farm or tract of land aforesaid unto the heirs of my said daughter Mary in fee simple absolute, clear and discharged from the trust aforesaid."

The tract of land in Mispillion Hundred, as appears from the return of the freeholders, in fact contains about 700 acres of land and the two tracts in South Murderkill Hundred contain, as appears by said report, something over 400 acres. This discrepancy between the will of Samuel Warren, senior, and the report of the freeholders is not accounted for by any proof in the cause, but the discrepancy is immaterial, as there is no doubt that the land mentioned in the will above recited and the land of which partition is sought are the same. Thomas H. Moore has filed his petition, therein stating that he intermarried with the said Miriam E. Moore, the petitioner in the proceedings for partition on or about the 4th day of September, 1852, and had by her issue born alive and thereby became tenant by the curtesy initiate of the lands of which she was seised for and during said coverture, and that as said tenant by the curtesy initiate in the lands of his said wife, Miriam E., he has been informed and believes that he has an interest and is enti-

tled to be made a party to said proceedings in chancery and he therefore prays that he as her husband may be made a party thereto.

He was made a party by the consent of the solicitors for the plaintiff and defendants respectively.

The freeholders appointed to make partition of the lands have reported that the same cannot be divided without detriment to the parties entitled and that they therefore have appraised the lands as by their commission they were commanded to do. The lands in respect to which partition is prayed, have been sold, the proceeds of sale paid into court, and the question is now raised by the solicitors for the husband of the petitioner whether her share of the proceeds of sale shall be paid to her absolutely, or, as they claim would be proper, shall be ordered to be invested for her benefit, the interest paid to her for life and the principal held to secure the possible right of the husband therein should he survive the wife.

An estate by the curtesy, says Cruise, quoting Littleton, vol. 1, § 1, of chap. 1, title 5, p. 107, is where a man taketh a wife seised in fee simple or in fee tail general or seised as heir in special tail, and hath issue by the same wife, male or female, born alive, albeit the issue after dieth or liveth, yet if the wife dies the husband shall hold the land during his life by the law of England.

And a tenant by the curtsey of England, says Blackstone, book 2, chap. 8, p. 126, is where a man marries a woman seised of an estate of inheritance, that is, of lands and tenements in fee simple, or fee tail, and has by her issue, born alive, which was capable of inheriting her estate. In this case he shall on the death of his wife hold the lands for his life as tenant by the curtesy of England. There are four requisites, says Blackstone, necessary to make a tenancy by the curtesy: marriage, seisin of the wife, issue, and death of the wife.

1. The marriage must be canonical and legal.

2. The seisin of the wife must be an actual seisin or possession of the lands; not a bare right to possess which is seisin in law, but an actual possession; and therefore a man shall not be tenant by the curtesy of a remainder or reversion.

3. The issue must be born alive. The husband, he says, by the birth of the child becomes tenant by the curtesy initiate, and may do many acts to charge the lands, but his estate is not consummate till the death of the wife; which is the fourth and last requisite to make a complete tenant by the curtesy.

Miriam E. Moore had not the possession nor the right to the possession of these lands or any part of them until the death of her mother, Mrs. Mary Darby. Her mother herself had not the right to their possession in her lifetime, but the right to their possession during her lifetime was in Solomon Townsend Warren and John W. Hall and their heirs during her lifetime. The right to the possession of Miriam E. Moore to any portion of these lands did not accrue until the death of her mother, Mrs. Darby, which occurred, as Mr. Moore states in his petition, on or about the 27th day of January, 1888. At this period her children Miriam E. Moore, Samuel W. Darby and John C. Darby became entitled to the possession of the lands under the will of their grandfather Samuel Warren, senior.

Before that day and before Miriam E. Moore, and of course before her husband, Thomas H. Moore, could become entitled to any portion of said lands, the Legislature of Delaware had in effect abolished the right of a tenant by the curtesy initiate in this State.

In fact, tenancy by the curtesy of England and tenancy by the curtesy as theretofore existing in Delaware ceased to exist.

But to consider the law in reference to this subject independently of our Acts of Assembly, a man was not entitled to tenancy by the curtesy nor a woman to dower out of a reversion or a remainder expectant upon an estate of freehold; but upon a reversion expectant upon an estate for years both of these rights (of dower and of curtesy) accrue, for the possession of the tenant for years constitutes a legal seisin of the freehold in reversion. 1 Sharswood's Bl. bk. 2, chap. 8, p. 126; *Stoughton* v. *Leigh,* 1 Taunt. 410; *De Gray* v. *Richardson,* 3 Atk. 470; *Goodlittle* v. *Newman,* 3 Wils. 521.

The right the husband acquires by marriage in the lands of the wife is thus stated in vol. 2, p. 131, of Kent's Commentaries, Lacy's edition 1889: "If the wife, at the time of marriage, be seised of an estate of inheritance in land, the husband, upon the marriage, becomes seised of the freehold *jure uxoris,* and he takes the rents and profits during their joint lives. It is a freehold estate in the husband, since it must continue during their joint lives, and it may, by possibility, last during his life. It will be an estate in him for the life of the wife only, unless he be a tenant by the curtesy. It will be an estate in him for his own life, if he dies before his wife, and in that event she takes the estate again in her own right. If the wife dies before the husband, without having had issue, her heirs immediately succeed to the estate. If there has been a child of the marriage born alive, the husband takes the estate absolutely for life, as tenant by the curtesy, and on his death the estate goes to the wife, or her heirs, and in all these cases the emblements growing upon the land at the termination of the husband's estate go to him or his representatives."

If during her life real estate is converted by operation of law into personal estate the conversion will be treated as her own. *Graham* v. *Dickinson,* 3 Barb. Ch. 170, 5 L. ed. 861.

The rents, issues, and profits of the wife's lands accruing during coverture belong absolutely at common law to the husband. How effectually these common-law rights of the husband had been changed by the statutes of this State will appear by reference to those statutes, and here I will remark that these statutes are remedial in character and must be construed by courts so as to effectuate the intention of the Legislature so far as the same can reasonably and properly be done.

Our first Statute upon this subject was passed March 17, 1865, and provided "that the real estate, mortgages, stocks, and silver plate belonging to any married woman at the time of her marriage, or to which she may become entitled at any time during her coverture, shall remain and continue to be her sole and separate property, and shall not be subject to the disposition of her husband by alienation, transfer, assignment, or otherwise; or be liable to the debts or contracts of her husband, except where such debts are judgments recovered against him for her liabilities before marrrage; provided, that nothing in this section shall be construed to authorize the wife to sell or otherwise dispose of her real estate, mortgages, stocks, or silver plate without her husband's consent, evidenced by writing under his hand and seal, or to authorize her to create any incumbrance upon her real estate, or to dispose of the rents, issues, and profits thereof, or the interest upon her mortgages, or dividends, or other income arising from her stocks, without his consent, evidenced in the same manner: and, provided, further, that nothing herein contained shall be construed to affect, in any manner, the rights of the husband (if he survive the wife), as tenant by the curtesy in the real estate of his wife."

The Act to secure to married women certain of their own earnings, p. 95, vol. 14, has no relation to the case before the court.

By an Act for the protection of married women, passed April 9, 1873, vol. 14, p. 638, § 1, it was provided "that the real and personal property of any female who may hereafter marry, and which she shall own at the time of her marriage, or that any female now married may receive by gift, grant, devise, or bequest from any person other than her husband, shall be her sole and separate property, and the rents, issues, and profits thereof shall not be subject to the disposal of her husband nor liable for his debts."

This last Act was amended March 17, 1875, by striking out said first section and inserting among other things, in lieu thereof: "Section 1. That the real and personal property of any married woman, which has been heretofore acquired, is now held, or which she may hereafter acquire in any manner whatsoever, from any person other than her husband, shall be her sole and separate property, and the rents, issues, and profits thereof shall not be subject to the disposal of her husband, nor liable for his debts."

These are the portions of our Acts properly known as Married Women's Acts having relation to the question now before me. Regarded as remedial, and construed so as to advance the remedy and effect the object intended to be accomplished by the Legislature, what are their effects in the case before me?

Mrs. Miriam E. Moore was not entitled to the possession of these lands or any portion of them until the 27th day of January, 1888, the day of the death of Mrs. Darby, and the day on which the estates of Solomon Townsend Warren and John W. Hall, trustees thereof, expired. Thomas H. Moore had not then and has not since had any estate and no interest in said lands. He has not had the legal right to enter upon or into the possession of said lands for any purpose whatever; he is not entitled

to the perception of the rents and profits of said lands or any part thereof during the lifetime of his wife; he has no estate by the curtesy initiate therein; he is entitled only to the possibility of entering into the possession of his wife's interest therein and enjoying the possession thereof during his lifetime in case he survives his wife, and in case no partition thereof be made between the tenants in common thereof, and unless the conversion of the wife's interest therein into money be in fact and in law not an absolute conversion, but a qualified conversion only. Would such a conversion of land into money under these circumstances have the effect of securing to Thomas H. Moore the preservation and enjoyment of the principal sum of money adjudged as the value of the wife's interest in the lands under the proceedings in partition in this cause?

The doctrine of conversion was thus stated by an eminent English equity judge in a leading case upon this subject: "Nothing is better settled than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted, and this, in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise; and whether the money is actually deposited, or only covenanted to be paid. Whether the land is actually conveyed, or only agreed to be conveyed, the owner of the fund, or the contracting parties, may make land money, or money land. The cases establish this rule universally." See 1 Pom. Eq. Jur. § 161, and authorities cited.

The principle properly applicable to this case was decided by the superior court at its fall session in 1874 in the case of *State, for the use of Samuel D. Coverdale, versus Randall B. Gorman and others.*

The court decided in that case that under the Act for Married Women, passed in 1865, a wife's interest in a recognizance in the orphan's court on the assignment of the real estate of a deceased father cannot be attached for the debts of her husband, except for such as are properly provided for in it.

In that case the court said: They considered that it would be contrary to the spirit and policy as well as the intention of the Statute of 1865, for the benefit of married women, to now hold that a wife's sole and separate interest in the real estate of her deceased father secured by recognizance in the orphan's court may be attached for the debt of her husband except such debts as are specially provided for in it. *Jefferson* v. *Brady*, 4 Houst. (Del.) 626.

If I understood the argument of the solicitors for Thomas H. Moore, the husband of Miriam E. Moore, it was that the conversion of the interests of Mrs. Moore and her brothers by a decree of a court of chancery of the real estate belonging to them in common was not a conversion out and out, but a special conversion for the purposes of partition only; and that the share of Mrs. Moore in the amount of the sales of the lands made under the order of the court in this partition cause should not be ordered paid to her absolutely, but that she should be required to give security for her proportion of such sale, so that in case her husband should survive her that amount should be secured so that her husband, in case he should survive her, might have the enjoyment of it during his life as tenant by the curtesy therein.

The position of the counsel for Mr. Moore is not in my opinion tenable. It is not supported by a proper consideration of our Acts of Assembly in reference to the estates of married women, or of the doctrine of conversion as supported by adjudged cases.

Partition of estates held in common is a necessary incident of such estates.

Where such estates cannot in fact be divided between tenants in common the law requires that they shall be valued in money, and that such valuation shall be returned to this court by the freeholders appointed to make partition or valuation.  Such valuation being returned to the court, its duty is to decree a sale by a trustee to be appointed for that purpose, the trustee making sale under the authority of his appointment for that purpose. It is the duty of the court to decree the payment to each tenant in common subject only to costs and liens against them respectively.

No decision contrary to the principles here announced has been made by me since I have exercised the duties of chancellor, and none, I presume, have been made to the contrary, by any of my predecessors in office when their attention has been properly called to the provisions of our Acts of Assembly in respect to the rights of married women.

Let a decree be drawn for the payment to Mrs. Moore of her share of the proceeds of sale of the lands held in common by her and her brothers.