JOSEPH MAISANO,

*vs.*

ABRAHAM SPAIN and PAULINE SPAIN, his wife.

*New Castle, April 23, 1930.*

*Robert G. Harman*, for complainant.

*William F. Kurtz*, for defendants.

THE CHANCELLOR. The determination of the issue depended on the decision of two questions. One was a question of law and the other was a question of fact. The question of law had to do with the principle which the law would apply in running the division line between the properties of the complainant and defendants. Upon this point Judge Rodney charged the jury as follows:

"The question arises because of the fact that the lines in the deeds of the properties Nos. 715 Madison Street, owned by Spain, and 717 Madison Street, owned by Maisano, vary somewhat in direction from the center of the party wall between the two properties. The property No. 715 Madison Street begins at a point on Madison Street one hundred feet eight inches northerly from Seventh Street and thence runs westerly through the center of the party wall and parallel to Seventh Street to Thornton Street. The line then runs northerly thirteen feet eleven inches by Thornton Street and thence easterly parallel to Seventh Street and through the center of the party wall between this house (of the defendants) and the house on the north (No. 717 of the plaintiff) to Madison Street, and thence southerly thirteen feet eleven inches to the place of beginning.

"The description of No. 717 Madison Street in general agrees with the foregoing description except as to the distance from Seventh Street. It so happens that a line drawn through the center of either of the party walls would not run parallel to Seventh Street for the reason that said party walls are not quite straight. The party wall between the two properties consists of two parts—an old party wall and a new party wall. It is conceded that the center of the old wall is the true division line and the new wall was made a party wall by agreement and the center of such wall is the division line.

"The controversy arises from the construction of the proper direction of the party lines back of the rear wall of the building and running to Thornton Street. The defendants contend that from the end of the building, lines should then run immediately to Thornton Street on a line parallel to Seventh Street. This is the line adopted by the City authorities in this specific case and in their general treatment of like cases which frequently arise. * * *

"The plaintiff, Maisano, contends that from the end of the building on Spain's property the true lines should then drop down to points which are numerically in feet and inches the same distance from Seventh Street that they would have been if said party walls had run parallel to Seventh Street and that from these points so determined the lines should run to Thornton Street on lines parallel to Seventh Street. If these be the correct

lines there would be an encroachment on Maisano's land by the garage of Spain.

"Whether or not there is an encroachment on the property of Maisano by the garage of Spain is a question of fact, but this is necessarily governed by a question of law, viz., which is the proper line to be adopted? I am of the opinion that the line adopted by the City is the more reasonable and therefore the proper line because the other plan involves the adoption and use of an entirely new course and distance, viz., the new course of a few inches from the corner of the building toward Seventh Street, and this course and distance is not covered by nor mentioned in the deed at all."

I accept as correct the method adopted by Judge Rodney in his charge to the jury as the proper one for running the division line.

The next question is one of fact, which depends for its determination upon the location of the defendants' garage in relation to the division line as thus run—whether it extends over the same or not.

The general rule for laying a deed's description down on the ground is where natural boundaries are called for, you are to go to those boundaries, disregarding courses and distances. *Hunter v. Lank*, 1 *Har*. 10; *Nivin v. Stevens*, 5 Har. 272; *Dale v. Smith*, 1 *Del. Ch.* 1. In this case the line of the party wall constitutes throughout its length a part of the division line. *Nivin v. Stevens, supra*. The difficulty arises when the division line is run from the point where it leaves the party wall for its contact with Thornton Street. As already indicated, the line should then be run direct to Thornton Street and parallel with Seventh Street. Such a course is as near to a compliance with the calls of the deed as it is possible to get, without introducing an absolutely new course and distance which so far as the deed discloses was never in the intent or contemplation of the parties.

In this case the party wall, though continuous, is yet in two parts—the old wall and the new one. The description in the complainant's deed is to be read as referring to the old party wall, for that was the wall that constituted the monument on the ground when the deed's language became operative. Running the division line according to the principle above adopted, it would go from Madison Street through and to the end of the

old party wall, and thence in a direct line parallel to Seventh Street to Thornton Street. This would be the line as near as possible that is called for by the deed. Taking that as the line, the defendants' garage extends over it and encroaches upon the complainant.

The new party wall by continuing the line of the old one, brings up its rear one and one-fourth inches further upon the complainant's land, and hence, if the course parallel with Seventh Street were followed from that point, the defendants' garage would extend two and three-fourth inches instead of four inches over upon the complainant. But the parallel course should not be followed from the end of the new wall. This is for the reason that the new wall was made a part of the division line by agreement between the owners, which agreement postdates the deed and undertakes in no way to define the division line beyond the length of the new party wall. That being so, the line of the deed remained undisturbed beyond the end of the new party wall. According to the line of the deed therefore, the defendants, it would appear, have encroached upon the complainant to the extent of four inches instead of five and one-fourth inches as found by the jury.

The damage done by this encroachment turns out to be small. Furthermore the trespass appears not to have been a wilful one, for the defendants built their wall according to lines given them by the City Engineer's office and naturally thought that they were justified in taking the lines so given. The City Engineer's lines however are not conclusive upon questions of title between adjoining lot owners. *Nivin v. Stevens, supra.* While the lines given by the City Engineer are not conclusive upon the title, the defendants' asking for them and building in accordance with what was given them, negatives the thought of wilfulness in committing the trespass, and the evidence otherwise appears to me to acquit the defendants of wilfulness.

What then, under this state of facts, should be the relief, if any? *Pomeroy* in the fourth edition of his work on *Equity Jurisprudence*, at § 1922 of *Volume* 5, discusses the principles which ought to govern in such cases as this one. His language is as follows:

"The state of facts which has just been considered often occurs in such a form as to raise another question which courts of equity have had some difficulty in answering. If a defendant's building encroaches slightly on the plaintiff's land and the plaintiff's damage is small, while the cost to the defendant of removing it is great, should a court of equity disregard wholly the injury which granting relief to the plaintiff will cause the defendant, and issue the injunction. Or, should it balance the injury which its course will cause in granting or withholding relief, and be influenced by this consideration in its decision? * * * It should be premised in the beginning that the question cannot arise except in a case in which some sufficient reason for equity jurisdiction, such as irreparable injury or the prevention of a multitude of suits, exists; in other cases, the injunction will be refused on the simple ground that the legal remedy is adequate. * * *

"Assuming, then, that the only question before the court is the propriety of balancing the injury that may be caused to the parties by the decree, and remembering that the question does not arise except when equity has jurisdiction of the case because the plaintiff's legal remedy is inadequate, it should be noted that to deny the injunction is (1) 'to allow the wrongdoer to compel innocent persons to sell their right at a valuation'; and (2) to refuse him altogether any equitable relief in a case, where, on the ground of avoiding multiplicity of suits at least, he is clearly within one of the most frequently given reasons for assuming jurisdiction, and, where, also, his injury may be irreparable. In view of this situation it is clear that the plaintiff's prayer will not readily be denied, and it can safely be said that the argument based on the balance of injury to the defendant will be availing only in a limited class of cases. On the other hand, it is a general rule of equity not to exercise its extraordinary jurisdiction when it will operate inequitably and oppressively. The problem presented, is, therefore, to strike a medium rule between these principles, that, as fairly as may be, will do justice. The courts of Massachusetts and New York have considered the question, upon various states of facts, oftener than the courts of any other jurisdiction; and acting independently, have arrived substantially at the same result. That result, in the words of the Massachusetts court, is as follows: 'Where, by an innocent mistake, erections have been placed a little upon the plaintiff's land, and the damage caused to the defendant by the removal of them would be greatly disproportionate to the injury of which the plaintiff complains, the court will not order their removal, but will leave the plaintiff to this remedy at law.' The language of the New York court is: 'It must be remembered that a wilful trespasser cannot in this way acquire an inch of land, because the mandatory injunction must issue as to him; that in other cases where the injury to the plaintiff is irreparable the mandatory injunction will issue, and permanent damages will not be awarded; that where the granting of an injunction would work greater damage to an innocent defendant than the injury from which the plaintiff prays relief, the injunction could be refused absolutely, and the plaintiff be compelled to seek his remedy at law.'

"In practice these rules are probably almost the same, and they perhaps represent as nearly a fair resultant of the arguments on the side of both parties as can be arrived at. Both rules protect the plaintiff from very serious injury, both deny any protection to a wilful wrong-doer, and both, as far as possible, refuse to apply the remedy of mandatory injunction when to do so would be oppressive to the defendant. Doubtless they will be followed, though cases can be found which, not including the elements making necessary carefully qualified statements, contain broad *dicta* that the balance of injury will or will not be considered. It should be added by way of caution that the foregoing discussion applies only to the granting of permanent injunctions; it has already been pointed out that in application for a temporary injunction, when the rights of the parties are undecided, the balance of injury is a controlling consideration."

This is a case where the foregoing principles are applicable, for here the trespass is slight and the evidence shows the element of wilfulness to be lacking. The injunction will therefore not issue.

Decree accordingly.