IN THE MATTER OF THE REAL ESTATE OF
LAURA E. ELLIS, DECEASED.

*New Castle, July* 8, 1937.

SPEAKMAN, J., sitting.

*Francis A. Reardon,* for Marie Emily Lynch and Sarah Elizabeth Palmer.

*Edward Glenn Cook,* for Harry J. Ellis.

SPEAKMAN, Judge:

The sole question for the decision of the court is whether or not under the law of this State as it existed in 1927 a husband may be a tenant by the curtesy in the lands in which his wife, who died intestate, had a remainder expectant in fee on a prior life estate which did not determine during coverture, or may have any right or interest therein in the nature of curtesy or otherwise.

In so far as the reports show no court of this State has had occasion to consider the rights or interest of a surviving husband under the provisions of the said *Act* of 1923 (*Section* 3731 of the *Revised Code* of 1935) in any case where the facts were similar to the facts in the present case. There are, however, decisions under an earlier statute in which our courts have held that the husband cannot be the tenant by the curtesy of the wife's estate unless the wife was seized during coverture and in which the nature or character of the "seizin" was considered, the earliest of which was decided in 1832.

By the *Code* of 1829 of this State (*Section* 1 of "An Act concerning the real estate of intestates," passed in 1827)), page 315, it is provided in part, as follows:

"When any person having title or any manner of right, legal or equitable, to any lands, tenements, or hereditaments, in fee simple, shall die intestate as to the same, such lands, tenements, or hereditaments shall descend and pass in fee simple to the kindred, male and female of said intestate in coparcenary according to the following course, * * * Subject, however, in all cases aforesaid, to the rights of the surviving husband or widow, when there shall be such, as follows, that is to say:

"If the intestate leave a husband, who shall have had by said intestate during their marriage issue born alive, whether such issue had lived or died, such husband shall hold all such lands, tenements or hereditaments for the term of his life as tenant by the curtesy.

If the intestate leave a widow, then if there be any child of the intestate or lawful issue of any such child such widow shall have one-third part of all such lands, tenements or hereditaments to hold the same for the term of her life as tenant in dower; or if there be no child of the intestate nor lawful issue of any such child, the said widow shall have one moiety or equal half part of all such lands, tenements or hereditaments to hold to her for the term of her life after the manner of tenant in dower; or if there be no kin or heir of the intestate, the said widow shall hold all such lands, tenements or hereditaments for the term of her life. * * *"

This continued to be the law with respect to the husband's or widow's right or interest in the real estate of the deceased spouse except so far as the right or interest of a surviving husband or wife was affected by the several statutes passed for the protection of married women, which in effect abolished the right of a tenant by the curtesy initiate in this State. See *Moore v. Darby,* 6 *Del. Ch.* 193, 18 *A.* 768, 13 *L. R. A.* 346, until the passage of the *Act* of 1923 (*Section* 3731 of the *Revised Code* of 1935), by which it is provided in part, that

"The descent of intestate real estate, in all cases, shall be subject to the rights of the surviving husband or widow; that is to say, if the intestate leave a husband and issue, such husband shall have one-half part of the real estate aforesaid for the term of his life, and if the intestate leave a husband and no issue such husband shall have all of the real estate aforesaid, for the term of his life, as tenant by the curtesy;

"If the intestate leave a widow and issue, such widow shall have one-half part of the real estate aforesaid for the term of her life, and if the intestate leave a widow and no issue such widow shall have all of the real estate aforesaid, for the term of her life, as tenant in dower;

"If the intestate leave a husband or widow, and if there be no kin, or heir of the intestate, to the husband or widow in fee simple."

In the case of *Hunter v. Lank,* 1 *Har.* 10, which was an action in trespass *quare clausum fregit* brought to try the title to certain lands claimed by both parties, and in which the defendant, Lank, claimed as tenant by the curtesy, the Superior Court in 1832 held that if the defendant's wife was not actually seized in her lifetime her surviving husband, the defendant, could have no title by the curtesy, unless the testimony went so far as to prove him in undisturbed possession for twenty years.

In *Doe ex dem. Jackson v. Collins,* 2 *Houst.* 128, which was an action in ejectment tried before a jury in the Superior Court during the Fall Sessions of 1859, in which the plaintiff claimed as tenant by the curtesy, the court in charging the jury said:

"To entitle a plaintiff to recover in an action like this, as tenant by the curtesy for the term of his life on the death of his wife, of her real estate, it is incumbent upon him to prove to the satisfaction of the jury, first, that he was lawfully married to her, secondly that his wife was seized or possessed of an estate of inheritance in the lands in question during their marriage, and in the next place, that he had issue, or a child, or children born alive by her, capable of succeeding to, or inheriting the land, or a portion of it as her heir or heirs at law upon her death, and lastly her death; and if he has failed in any one of these particulars to establish it to the satisfaction of the jury, he is not entitled to such an estate in the lands, and cannot recover in the action."

In the matter of the *Partition of the Real Estate of James Davis, deceased,* 10 *Del. Ch.* 496, 95 *A.* 293, decided in 1910 by this court, it appears that James Davis devised all his real estate to his wife, Mary A. Davis, for life and at her death unto his six children, one of whom was Ann Marion, wife of James Marion, in fee. Ann Marion died intestate and without issue during the lifetime of her mother, Mary A. Davis, the life tenant, leaving to survive her her husband, James Marion. The Chancellor held that James Marion, the surviving husband of Ann Marion, had no interest in the lands and premises described in the petition for partition, because Ann Marion was not "actually seized" in her lifetime of any of the same lands and premises.

In the case of *Bush v. Bush, et al.,* 5 *Houst.* 245, decided by the Court of Errors and Appeals at the June Term, 1877, the court considered at great length the provisions of the act of 1827 (*Code* 1829, page 315) in so far as it had any application to estates in dower. In that case Margaret Bush, the widow of George Bush, who died intestate claimed dower in a moiety of a legal contingent remainder in fee simple in certain lands in Wilmington belonging to her

husband but of which he never had any possession or right of possession, he having died during the lifetime of Rebecca Leonard who was the *cestui que trust* for life. The court said, in part:

"It is not disputable that by the above clause in the will of Samuel Bush there was devised by the testator to his daughter, Rebecca Leonard, a trust estate for life, with a legal contingent remainder in fee simple to any issue she might leave to survive her, and a further remainder in fee, contingent upon the event of her dying and not leaving issue to survive her, to George Bush, the husband of the appellant, and his brother David Bush. It appears, as a fact in the case, that the appellant's husband died in the lifetime of his sister, Mrs. Leonard, the *cestui que trust*, and that she afterwards died also without ever having had any issue. * * *

"By the law of the land contingent remainders are descendible to the heirs-at-law of those who own them. * * * We are thus brought to the consideration and decision of the question whether or no, by the law of this State, a widow is dowable of an estate of inheritance of which her husband never had any possession nor the right to any; in the case before us it was a contingent remainder that belonged to him. And we may say that for this question there is, in our opinion, no distinction between a vested remainder in fee simple with an intervening freehold estate outstanding, and a contingent remainder in fee simple. Both, with respect to the question before us, are alike.

\* \* \*

"The question then is a simple one, though its solution involves much consideration—Is the appellant entitled to dower in the contingent remainder of her deceased husband? * * *

"If the question were upon the mere words of the intestate law without any reference to the law of dower as understood by the courts and the bar, we might possibly adopt the view presented by the appellant's counsel and say that her claim is a valid one; for those words are, '*When any person having title or right, legal or equitable, to any lands, tenements, or hereditaments in fee simple shall die intestate of the same, such lands, tenements, and hereditaments shall descend in fee simple in coparcenary according to the following course or order, to wit:*' which order is set forth in five clauses immediately following, and then comes the following language with respect to a surviving husband or wife: '*The descent of intestate real estate shall, in all cases, be subject to the rights of the surviving husband or widow, that is to say, * * * if the intestate leave a widow and also any child, or lawful issue of such child, said widow shall have one-third part of the real estate aforesaid for the term of her life as tenant in dower.*'

"The language used by the legislature with respect to the subject of descent is certainly very strong, and considered merely as an abstract expression of the will of the General Assembly, would be hard to treat as meaning aught else than that a man's widow should have her third of every right, legal or equitable, vested and

in possession, or contingent only to lands, tenements, or hereditaments of which he died holding in inheritable estate intestate * * *."

After an exhaustive review of the statutes relating to dower passed by the General Assembly of the three counties now constituting the State of Delaware prior to the separation, and of the General Assembly of this State prior to 1877, and also Chancellor Ridgley's notes of various cases in which estates in dower were considered and which are not now available, the court continuing said:

"In the absence of any personal knowledge concerning the use of the terms employed in the act of 1827 to define the kind of estate that was to be the subject of assignment of dower and division in the Orphans' Court, we are compelled to rely upon what would seem to have always been the understanding of the profession as to their meaning, which is that they were not intended or supposed to enlarge that of the word 'owner', as used in the later acts we have cited and which had before received the judicial interpretation given to it in the case of *Walton v. Carlisle.* The words *title or right* in that statute, and as employed in the subsequent re-enactment of it in both codes of 1852 and 1874, have always been understood, where a legal estate was the subject, as not amplifying the sense of the word 'owner' previously employed, but as intending to express the legal notion of proprietorship of an inheritable estate in possession, and this view is strengthened by the provision in them that proceedings for partition shall not be taken with respect to lands not in the actual possession of the intestate at the time of his death, etc. Such provision must, we confidently think, have been used to adapt the law to the views expressed by Chancellor Ridgley with respect to the meaning of the term owner—that is a person *seized.* If so, then *ownership* of lands, held by legal title, and 'seizin' of them are convertible terms, and the Chancellor was right in his decree. * * *

" * * * The freehold as well as the inheritance must be in the husband or no right or dower can attach. This is an elementary principle of the law of dower familiar to every student even. * * *"

The language of the Court of Errors and Appeals in the *Bush Case* can admit of no question as to the proper construction of the first paragraph of *Section* 1 of the act of 1923—but if any thing further be needed it is a well recognized rule that

"Where a statute that has been construed by the courts of last resort has been re-enacted in same, or substantially the same, terms, the legislature is presumed to have been familiar with its construction, and to have adopted it as a part of the law, unless

a contrary intent clearly appears, or a different construction is expressly provided for. * * *" 59 *C. J., Statutes,* § 625.

By applying this rule it necessarily follows that the meaning given by the Court of Errors and Appeals to the language of the first paragraph of *Section* 1 of the act of 1827 (*Code of* 1829) and the reenactment of it in the *Codes of* 1852 and 1874 in substantially the same language must be followed in construing the first paragraph of *Section* 1 of the act of 1923 (*Section* 3731 of the *Revised Code of* 1935) which was re-enacted in the identical language as contained in the *Codes of* 1852 and 1874. This is so because there is nothing contained in the act of 1923 providing for a different construction than that given to the said language in the *Codes of* 1852 and 1874 by the Court of Errors and Appeals in 1877, which at that time was the court of last resort in this State, nor does a contrary intent appear therein.

The conclusion of the court is that because the remainder expectant in fee belonging to Laura E. Ellis did not determine during coverture her surviving, husband Harry J. Ellis, upon her death acquired no right or interest therein either under the provisions of the *Act of* 1923 (*Section* 3731 of the *Revised Code of* 1935), or otherwise, and for that reason he is not entitled to any part of the proceeds of sale. An order will be made directing the payment of the money in the registry of the court, after deducting therefrom the cost of these proceedings, to the said Laura Eleanor Rurak, Marie Emily Lynch and Sarah Elizabeth Palmer, in equal shares.