APTHORP and others *vs.* COMSTOCK and others.

Where a deed is alleged to be a forgery, and has been improperly certified as duly proved and recorded, the court of chancery may take jurisdiction of the cause, for the purpose of settling the title to a large tract of land, and to prevent a multiplicity of suits. But in such a case, it is proper to submit the question, as to the genuineness of the deed, to a jury under the direction of the court.

Although the court of chancery in the exercise of a sound discretion may decide matters of fact, without the intervention of a jury; yet, if important rights are depending on mere questions of fact, it may be proper to award a feigned issue for the trial of such questions of fact.

Where a feigned issue is awarded, the court may impose such restrictions on the parties as will prevent all fraud or surprise upon the trial of such issue.

Where the court of chancery directs an action to be brought, although particular directions are given, the parties in other respects are left to their legal rights, and the application for a new trial, in such a case, must be made to the court of law in which the action is brought, and subject to the rules which govern such court in other cases.

Where an issue is directed, it is to inform the conscience of the chancellor, and the application for a new trial must be made to this court.

The court of chancery will not direct a new trial of a feigned issue, merely on the ground that improper testimony was received on the trial, or that the judge rejected that which was proper, if, on the whole facts and circumstances, the chancellor is satisfied the result ought not to have been different if such testimony had been rejected in the one case or received in the other.

Where a fraudulent combination is established, the acts and declarations of any one of the parties thereto may be proved against the others. But only such acts and declarations as constitute a part of the *res gestæ* ought to be so received.

THIS case is reported in 1 Hopkins's R. 143, and in 8 Cowen's R. 386. After the decision of the court of errors on the appeal of the defendants, testimony was taken in the cause, and a great number of exhibits were put in and proved before the examiner. Most of the exhibits were produced for the purpose of shewing by comparison of hands that the deed was a forgery; and that John Jarvis, of Cold Spring, was the witness who appeared before the commissioner and swore to the execution of the deed. The cause was brought to hearing on pleadings and proofs.

*S. M. Hopkins,* for complainants.

*F. A. Tallmadge & J. Tallmadg*e for defendants.

THE CHANCELLOR. It is not necessary for me to examine the question whether this is a proper subject of equitable jurisdiction. This question was distinctly raised before Chancellor Sanford, on the motion to dissolve the injunction in this cause and in the court of errors on the appeal from his decision. In both cases the jurisdiction of this court was sustained. I have no doubt of the correctness of these decisions. But if I were of a different opinion, I am not at liberty to overturn the decision of the court of errors, which has now become the law of the case, on that point. I have looked into the several opinions delivered in the court of errors and find this question must have been passed upon by that court. The jurisdiction of the court in this case has been sustained on the ground of the alleged forgery of the deed to Enoch Comstock; or, upon the charges in the bill, that it is now attempted to be used for the purposes of fraud; that the proof endorsed upon the deed whereby it was admitted to be recorded, was surreptitiously obtained, by an imposition on the commissioner, and by perjury; that the deed remains a cloud upon the complainant's title, and cannot be removed from the record; and that the title cannot be settled so as to prevent a multiplicity of suits without the aid of this court. Whatever opinion may be formed as to the genuineness of the signature of Andrew Pierce to that deed, no one, who examines the facts in this case, can doubt that the proof of the deed was by the perjury of the person who was imposed upon the commissioner as one of the subscribing witnesses. Although the commissioner was not sufficiently cautious in ascertaining the identity of the witness, there is no ground to suppose he had any connection whatever with those concerned in the fraud, or that he intentionally violated his duty.

Several questions are presented by the pleadings and proofs. The first is as to the genuineness of the signatures of Andrew Pierce, and the subscribing witnesses to the deed. Even if those signatures are genuine, and on this subject there is

certainly room for great doubt, it does not follow that this deed is to be sustained. There is reason to believe, if the deed was genuine, that it was found among the papers of Andrew Pierce, by Tallman, after his death, or at least after he ran away; and that it was never in fact delivered to Comstock, in consequence of the bargain for the sale of the lands having been rescinded. Or, if it had been delivered, that it was returned, upon an agreement to rescind the sale; and with the intention of revesting the title in Pierce. In either case, the defendants would not, at this time, have any equitable claim to the land.

*Although this court in the exercise of a sound discretion,* has a right to decide every matter of fact which comes before it without the intervention of a jury, yet there are some cases in which important rights, depending upon a mere question of fact, ought not to be decided without giving the defendant, who has not come voluntarily into this court, an opportunity to establish his claims before a jury. The question *as to the genuineness of this deed,* I consider one peculiarly proper for the decision of a jury. And as there must be an issue for that purpose, I shall at the same time give the defendants an opportunity to show, if they can, that this deed came into the hands of those who procured it to be proved before the commissioner, either directly or indirectly from the supposed grantee. I shall also impose such restrictions upon the parties as will prevent all fraud or surprise on the trial.

There must, therefore, be feigned issues made up and tried at the circuit in New-York, unless the parties consent to a trial in the superior court of that city, for the purpose of settling the following points; First, whether the signatures of Andrew Pierce, and the subscribing witnesses to the deed, are genuine signatures; second, whether the deed was delivered by the grantor to Enoch Comstock, or to any other person for his use, at the time it bears date, or at any time before the execution of the deed of the 31st of January, 1793, to Davenport; and, third, whether the person who procured the deed to be proved before the commissioner, or George Hepburn, or David Tallman, obtained the same directly or indirectly from the custo-

dy or possession of Enoch Comstock or his heirs. Either party is to be at liberty on the trial to examine any witness whose testimony was read upon the hearing of this cause, or to read their depositions heretofore taken, if they are dead, or out of the jurisdiction of the court ; and either party is also to be at liberty to read the deposition of any witness of the opposite party, which was read on the hearing of this cause. And to prevent any surprise by the introduction of new witnesses, notice of trial must be given at least thirty days before the day appointed for such trial ; and no witnesses not heretofore examined are to be introduced on the trial, unless the party producing such new witnesses shall, at least fifteen days before such trial, give to the opposite party, or to his attorney or solicitor, notice of his intention to produce such witnesses, with their names and additions, and their usual place of abode or residence, with such particularity as will enable such party to find out the witnesses, and ascertain their character. But this prohibition as to new witnesses is not to extend to those who are called merely for the purpose of impeaching other witnesses ; or where the judge who tries the cause shall be satisfied there is a reasonable excuse for not giving such notice, or for giving a notice for a shorter period of time. The proof of the execution of the deed, taken before the commissioner, is not to be received on the trial as any evidence of the execution thereof ; or of the genuineness of the signatures of the grantor, or the subscribing witnesses to the deed. The issues are to be so framed that the defendants in this cause may hold the affirmative of the several questions above stated ; and they are to be at liberty to open the case and close the argument on the trial. Either party is to be at liberty to notice the cause for trial, and neither party is to be permitted to put it off without sufficient cause shown, and on the usual terms. The trial must also be by a struck jury, if requested by either party.

---

THE jury having found a verdict for the complainants on each of the issues above directed, the cause was again heard, on a motion for a new trial, and upon the equity reserved.

*S. M. Hopkins*, for the complainants.

*F. A. Tallmadge*, *&* *J. Tallmadge*, for the defendants.

THE CHANCELLOR. The order for the feigned issue in this cause, which appears to have been settled between the parties, has referred one question to the jury, which the court intended to have reserved for its own decision on the coming in of the postea. The last issue, which gave the defendants the privilege of showing, if they could, that the deed came from the possession of Enoch Comstock or his heirs, either directly or indirectly, into the hands of those who procured it to be proved before the commissioner, was intended to aid the court in deciding the question whether the contract to sell the land to Comstock had been rescinded. But by the form of the issue, the jury have passed directly upon the main question. They have found that neither the signature of the grantor, nor of either of the subscribing witnesses, to the deed in controversy, is genuine ; that the deed did not come into the hands of those who procured it to be proved from the possession or custody of Enoch Comstock or his heirs, either directly or indirectly ; that the contract for the sale of the land to Comstock was given up and rescinded by the parties ; and that the deed of the premises, if one was ever executed, was cancelled, or re-delivered or returned to Pierce.

Very little new light is thrown upon this transaction by the re-investigation of the facts before the jury ; but the new evidence, so far as it goes, tends to strengthen, if possible, the conclusion at which I had before arrived upon the last point. With the finding of the jury upon the question of the rescinding of the contract of sale, I am perfectly satisfied. My own opinion, upon all the evidence, perfectly coincides with theirs, that the contract of sale to Comstock was rescinded by the parties ; and that if any conveyance was ever executed and delivered by Pierce, it was given up to him at that time, under a supposition that no re-conveyance was necessary ; or that a re-conveyance was actually executed, and has been suppressed by those who were concerned in the subsequent frauds. In either case, the defendants have no right at this

1831.

Apthorp
v.
Comstock.

time to set up any title, derived under a conveyance from Pierce, against his subsequent grantees or their representatives. I am also satisfied, beyond all question, that John Jarvis of Cold Spring, was the witness who appeared before the commissioner on the 13th of October, 1819, and proved the deed in question; and also proved another deed from Pierce to Stiles, under which Gilbert and Hepburn pretend to claim title, through other deeds bearing date two days thereafter. Whether all these deeds were forgeries, and whether Jesse Gilbert was the person who suborned Jarvis to swear to the execution of the two deeds before Ruggles, the commissioner, are questions not necessary to be decided in this cause. As the original deed from Pierce to Judson Stiles is not in evidence, it is impossible to say whether it was originally filled up in the name of Judson Stiles, which now appears in the exemplification of the record, or whether it has been altered from a deed to Judson Titus, whose name is inserted therein as the person from whom the consideration was received. The question whether all or any of the signatures to the deed in question are genuine, is one of more doubt than the others upon which the jury have passed; but even as to that, the weight of testimony is probably in accordance with the verdict of the jury.

It then remains to be seen whether there was any such error in the decisions of the judge who tried these issues, as to render it proper to grant a new trial. And here it may be proper to observe that the principles upon which this court directs a new trial of a feigned issue, are somewhat different from those which govern courts of law in granting new trials. Where this court directs an action, although accompanied by particular directions, the parties in other respects are left to their legal rights. The application for a new trial is in that case to be made to the court in which the action is brought, and is subject to the rules which govern the proceedings of that court in other cases. But if an issue is directed, it is to inform the conscience of the chancellor; and the application for a new trial must be made here. *Carstairs* v. *Stein*, 2 Rose's R. 178. *Fowkes* v. *Chadd*, 2 Dickens' R. 576. *Ex parte Kensington*, Cooper's R. 96.) In the latter case this

1831.

Apthorp
v.
Comstock.

court will not grant a new trial merely on the ground that the judge received improper testimony on the trial of the issue, or that he rejected that which was proper, if, on the whole facts and circumstances, the chancellor is satisfied the result ought not to have been different, if such testimony had been rejected in the one case, or received in the other. (*Head* v. *Head*, 1 Sim. & Stu. R. 150. Turn. & Russ. R. 142, S. C. on appeal. *Barker* v. *Ray*, 2 Russell's R. 63. *Collins* v. *Hare*, 1 Dow's R. N. S. 139, *per Lord Lyndhurst*.)

The first objection on the part of the defendants is, that the judge received evidence of the acts and declarations of persons not parties to the suit, and who were not acting as agents for the defendants. It appears to be well settled that where a fraudulent combination is established, the acts and declarations of any one of the parties thereto may be proved against the others. (*Patton* v. *Freeman*, 1 Cox's N. J. Rep. 113. *Wilbur* v. *Strickland*, 1 Rawle's R. 458. *Wright* v. *Court*, 2 Car. & Payne's R. 232.) But I apprehend that such acts and declarations only as constitute part of the *res gestæ* ought to be so received. In this case I think there was sufficient evidence of a fraudulent combination between John Comstock, Tallman, Hepburn, and some others not necessary to be here named, to extort money from the heirs of Davenport and others by means of this deed, as early as September, 1819, and probably at the time Comstock applied to Tallmadge to commence a suit in the March previous. And such combination continued for some time thereafter; probably down to the time of the trial, as to some of the parties. The acts and declarations of Tallman, Hepburn, &c. therefore, formed a part of the *res gestæ*, and were admissible in evidence against Comstock. Gilbert and Jarvis had been examined as witnesses before the hearing; and the order directing the issues intentionally gave the privilege to the complainants to use their depositions, and to establish their connection with the fraud by other testimony, in opposition to particular facts sworn to by them. Admitting, however, that the judge may have erred in admitting evidence of some of the more recent declarations of Tallman, &c. there is sufficient testimony, to which no legal objection exists, to satisfy

me that an intelligent jury must always come to the same re-sult, upon the main point on which the equitable rights of these complainants rest. On that point the conscience of the court is satisfied ; and if the verdict had been different I should pro-bably have been compelled to grant a new trial. The question of forgery is more pro, erly a legal question. If the cause had turned exclusively on this point, the court would proba-bly have directed an action to be brought, or would have per-mitted the parties to go to trial in the action of ejectment al-ready commenced, under such restrictions and directions as were proper to guard against further frauds. But if the deed was actually signed by Pierce and by the subscribing wit-nesses whose names appear thereon I think the result of this cause must be the same, on the other grounds established by the proofs.

I see no objection to the competency of Penfield as a wit-ness. The only possible interest he could have had, appears to have been released before he was examined in the origin-al cause. Neither could the declarations of Andrew Pierce after he had parted with his title, be received in evidence. They were therefore properly excluded on the trial. And this is certainly not a case in which cumulative testimony can be received, so as to justify the court in granting a new trial on the ground of the newly discovered evidence.

The application for a new trial must therefore be denied ; with the costs of resisting the same, against all the defendants, except the infant and the feme covert. A decree must al-so be entered, settling the rights of the parties as established by the verdict, and making effectual provision for the protec-tion of the complainants and their grantees, by injunction, re-lease, &c.

Although there is no reason to suppose that any of the defendants, except John Comstock, were originally parties to the fraudulent combination to cheat and to extort money from these complainants, yet they have subsequently adopted and confirmed what he and the other conspirators had done, by bringing ejectments when they could not have believed in the equity and justice of this claim, whatever opinion they

Vol. II. 62

1831.

De Caters
v.
Le Ray De
Chaumont.

may have formed as to their mere legal rights. I cannot therefore excuse them from the payment of that part of the complainants' costs and expenses which is taxable as between party and party. The infant and the feme covert, however, are not responsible for any part of this litigation; and they are to be excused from the payment of any part of those costs to which the complainants have been subjected by this inequitable claim on the part of the defendants.