### Munson *vs.* Reed and others.

When a cause comes on to be heard upon pleadings and proofs, and the testimony as to a leading and turning fact in the cause, is so nearly balanced as to leave the court in doubt; a feigned issue may be awarded by the court itself, without any motion from either party, to have such fact tried by a jury.

A court of Chancery have a right to decide upon questions of fact without the intervention of a jury, but when important rights are depending upon a question of fact, and the court are in doubt as to the proof of the fact, it is proper to send it to a jury for trial.

THIS was a bill filed to foreclose a mortgage, executed by the defendant Morton Reed, to Nelson Reed, assigned by Nelson Reed to John D. Rogers, and by John D. Rogers to the complainant.  The answer of the mortgagor and a purchaser of the mortgaged premises, under a subsequent judgment, sets up the defence of usury.  The usurious agreement is alleged to have been made between the mortgagor and Rogers, through the intervention of

Nelson Reed, and that the mortgage was taken to Nelson Reed, for the purpose of a cover to the transaction, and immediately assigned to Rogers; of all which facts, Rogers is alleged to have been cognizant. Nelson Reed was examined as a witness without objection, and no objection is made to the reading of his testimony.

April, 1841.

Munson
v.
Reed and
others.

The character of N. Reed, for truth and veracity, is impeached by many witnesses, and sustained by more. John D. Rogers was also examined as a witness. The case came on for hearing upon pleadings and proofs.

*J. Young*, for complainant

*O. Hastings*, for defendants.

THE VICE CHANCELLOR. The testimony in this cause presents an embarrassing question for decision upon the proofs before me in this cause. The testimony of witnesses bearing upon the cause directly, present a series of improbabilities, to say the least, except that of Nelson Reed, who is so far impeached that it leaves the court in doubt what credit to attach to his evidence. It is hardly probable, for instance, that Rogers, after he had commenced one suit in this court to foreclose this mortgage, and finding that there would be a defence to it, withdrew it, could afterwards find any person who would be willing to purchase the mortgage of him at its full face, when such purchaser knew that there was or would be a defence set up against it. Yet Rogers swears that he sold this mortgage to the complainant under such circumstances. Again, it is hardly probable that the mortgagor should complain that

he was surprised and injured, upon ascertaining that this mortgage was in Roger's hand, after he had paid the mortgagee a considerable portion of its amount. His complaints of this character would lead us to infer that he was ignorant of the assignment to Rogers, and had no notice thereof ; and if such was the fact, he could have easily learned that his payments to the mortgagee, before notice, must have been allowed upon the mortgage. Yet two or three witnesses prove that the mortgagee did more than once make the representations, in relation to this mortgage, above alluded to.

The substantive and affirmative proof of usury in this mortgage rests upon the testimony of Nelson Reed. His character for veracity is impeached by a large number of witnesses, and sustained by a still larger number. To decide this case either way, is to decide upon Nelson Reed's reputation. It is asserted, and indeed it appears, that almost all the witnesses who impeach N. Reed's reputation, are those who have suffered by him pecuniarily. This fact, while it must be admitted that it is well calculated to sharpen the feelings of such witnesses against Reed, to a degree of vindictiveness, yet it also is evidence that they held that sort of relationship with him which would make them the best judges of his character. The very dealings out of which these losses arose, show a degree of intimacy with Reed which would enable them to be good judges of his conduct. Those who are connected with a failing man have better opportunities than others to determine whether he has pursued the path of honor and integrity, or whether his shiftings and turnings, and prevarications are such and so dishonest as to render

him unworthy of general credit in other transactions. On the other hand, the witnesses to sustain Reed's reputation, though more numerous, yet many of them have not known him for the last two or three years, and some of them speak in a manner to add to the weight of the testimony on the other side. This court is not the best forum to decide upon such a question, particularly when the testimony is nicely balanced. If decided here, it must be decided upon written depositions, without any knowledge of the witnesses; without that knowledge which may be derived from even seeing the witnesses. The court, too, are ignorant of the relative residences of the party impeached, and the witnesses impeaching him. All this a jury of the vicinage could know, comprehend and apply, with more judgment than the court can do. It seems to me to be one of the very cases which should, in justice to all parties, and the witness himself, go to a jury.

April, 1841.

Munson
v
Reed and
others.

This court may, doubtless, in the exercise of its discretion, decide upon every matter of fact which comes before it without the intervention of a jury. It is the right of this court in all cases, and it is its duty in those cases where the testimony as to facts is not doubtful, to decide upon questions of fact. (Apthorp vs. Comstock, 2 Paige, 482.) Yet there are many questions where important rights are depending upon a question of fact, which propriety indicates should be passed upon by a jury. In this case, not only the rights of the parties, but the character of one of the witnesses, are at stake; and it seems to me to be peculiarly proper that it should go to a jury. The testimony as to the reputation of the principal witness is so nearly balanced that I am in

April, 1841.

doubt. This cause must go to a jury for the purpose of settling this doubt; and as it must go there for such purpose, the whole question of usury can, with propriety, be passed upon by them.

There must be a feigned issue made up and tried at the Livingston circuit, for the purpose of settling whether the usury alleged in the defendant's answer in this cause was committed. Such directions will be given in framing the issue, upon the suggestion of either party, as will be best calculated to ensure a fair trial and the eventual developement of the truth.