GEORGE W. LARRABEE, in equity, *vs.* SEWARD P. GRANT.

Cumberland. Opinion June 19, 1879.

*Chancery. Practice. Verdict.*

In a court of chancery, a verdict can only be set aside by the chancellor. The common law judge has no such power. Under our system, the law court, and not a single judge, has the power of a chancellor. Decisions in equity, except in minor matters arising under the rules, are to be made by the law court.

A judge, sitting at law to try issues in a case in equity, may send up his minutes of the evidence and certify his opinion of the correctness and justice of the verdict, but his opinion will not be conclusive.

A new trial may be granted in a court in equity when it would not be in a court of law; and *vice versa*.

In equity, a finding is not set aside for misrulings of the judge, nor for the improper reception or rejection of evidence, if upon the whole facts and circumstances the verdict is satisfactory; nor will the court abide by a verdict, though legally sustainable, unless it be satisfactory.

The general rule in chancery is, that, inasmuch as the responsibility of the decision upon the whole case rests upon the court, the findings by a jury must be such as shall satisfy the conscience of the court to found a decree upon, or they will set it aside.

There must be, however, some weighty or material reason why the verdict does not satisfy the court. The objection should not be arbitrary or capricious.

ON REPORT.

BILL IN EQUITY, which in substance alleges that in March, 1866,

in pursuance of a previous agreement between the parties, the defendant, at the request of the complainant, purchased of one Wilson a lot of land and buildings thereon for $950, paying $400 down (which was furnished by the complainant) and gave his note for $550, secured by a mortgage on the premises; that the same was done for the benefit of the complainant and as a loan to him; that the defendant then agreed to convey the premises to the complainant whenever he should pay the same and interest; that it was agreed that the defendant should hold the premises as security for said loan; that the complainant entered into possession thereof, paid the taxes thereon, and has held the same without molestation, and has paid all of said loan except $200; that in November, 1876, the defendant ordered the complainant to leave the premises; and that the complainant has tendered the amount due.

Defendant filed his answer, denying the trust, among other things, which need not be reported. The complainant filed his replication, and requested certain issues of fact to be framed and tried by the jury.

At the April term, 1877, the following issues were framed and tried, the jury finding for the complainant in each:

I. Was it or was it not agreed by and between the complainant and defendant, that upon the application by the complainant to the defendant, he (the defendant) should purchase the premises described in the complainant's bill of the owner thereof (one Christopher Wilson), for the benefit of the complainant, as his agent, and in trust for him, as alleged in his bill of complaint?

II. Did or did not the complainant advance the sum of three hundred dollars cash, and one hundred, also, by a horse, to the defendant, as and for part payment for said premises, and as the first and advance payment therefor, as alleged in said bill of complaint?

III. Did or did not the defendant pay the balance of the consideration for said premises, to wit: the sum of five hundred and fifty dollars, by giving his promissory note or notes therefor, and as a loan to the complainant, and take a deed of said premises to himself, to hold as security for such loan, as alleged in said bill of complaint?

IV. Did or did not the said Grant agree with the complainant to convey to him said premises, upon the payment of said balance (of $550) by the complainant to said defendant, with interest thereon, as alleged in said bill of complaint?

V. Did or did not said Larrabee pay to the said Grant, from March 13, 1866, to March 13, 1867, the sum of one hundred and fifty dollars, and interest thereon, in payment of one of the notes given by said Grant to Christopher Wilson, as in part payment of the balance of the consideration to be paid said Wilson for said premises, as alleged in the plaintiff's bill of complaint?

VI. Did or did not the plaintiff pay to said Grant, from March 13, 1867, to June 1, 1872, the further sum of three hundred and forty-six dollars and eighteen cents, or any other sum, and, if any other, what sum as in part payment of said loan and interest thereon, as the plaintiff hath alleged in said bill of complaint?

VII. Did or did not the defendant purchase the so called Sawyer lots for the benefit of the plaintiff, to be accounted for in the adjustment of the transaction involved in plaintiff's bill of complant?

Thereupon the defendant moved to set aside the findings as being against law and the weight of evidence. The motion was heard and overruled by the presiding justice.

A motion was also filed to set aside the findings upon newly discovered evidence reported.

*N. & H. B. Cleaves,* for the complainant.

*Clarence Hale,* for the defendant.

PETERS, J. Certain issues of fact, arising under the pleadings in this bill in equity, were framed for and presented to a jury, the decision of all of which was in favor of the complainant. The evidence is sent to us, on a report of the presiding justice, upon a motion of the respondent for a new trial. Newly discovered evidence is also presented upon an additional motion to set aside the verdict. A motion to the same effect was first made to the justice presiding and overruled.

The complainant makes the point that the action of the single judge was final on the respondent. *Averill* v. *Rooney,* 59 Maine,

580, decides that such would be the case in an action at law. We think it otherwise in the case of a bill in equity. The justice who presided at the trial of the issues submitted was sitting in a court of law, and the trial was there had upon legal principles and rules of evidence. The common law judge has no power to set the verdict aside. In a court of chancery that must be done by the chancellor. Under our system, the whole court, and not a single judge, has the power of a chancellor. Decisions in equity, except in minor matters, arising under the rules, are to be made by the whole court. A new trial may be granted in a court in equity when it would not be in a court at law, and *vice versa.* The one court proceeds on somewhat different grounds from the other, or may do so. For instance : In equity, a finding is not set aside for misrulings by the judge, nor for the improper reception or rejection of testimony, if the chancellor (here the full court) decides upon the whole facts and circumstances that the verdict is satisfactory, nor will the chancellor abide by the verdict, though legally sustainable, unless it is satisfactory. A judge sitting at law may send his minutes of the evidence to us, and certify his opinion of the correctness and justice of the verdict, and, under our system of the judges sitting upon both the law and equity side of the court, it would probably be a rare occurrence that his advice would not be followed, but in chancery practice it would not be conclusive. We do not understand that the learned judge who tried these issues intended by his action to express his satisfaction or dissatisfaction of the verdict rendered, but that his denial of the motion submitted to him merely expressed an unwillingness upon his part to indicate an opinion one way or the other, in view of the necessity that required the case to go before the judges in full court.

The motion seeks to set aside the findings of the jury, because against evidence and the weight of evidence. That the verdict is contrary to the weight of evidence, may be sufficient to set it aside. The point in the case at bar is in respect to how nicely the evidence should be balanced and weighed in order to determine whether the verdict be contrary to the weight of evidence or not. Undoubtedly a court in equity can exercise more discretion-

ary power in such a case than a court at law can. At law, a court does not set aside a verdict as being merely against the weight of evidence, unless it is so clearly so that the jury must be presumed to have been actuated by some improper influence, or by bias and prejudice, or to have committed some evident mistake. It is not enough to disturb the verdict that the court would have arrived at a different conclusion. But the general rule in equity is everywhere declared to be, that the findings by a jury must be such as shall satisfy the conscience of the court to found a decree upon, or they shall be set aside. No doubt there should be some material or weighty reason why the verdict does not satisfy the court. The objection to it should not be arbitrary merely and capricious. The conscience of the court should be satisfied unless such reason exists. The judgment in *Clark* v. *First Cong. Society, in Keene*, 45 N. H. 331, is a discussion of the merits of this question, as well as a learned review of the cases touching it, and the New Hampshire court concludes that, under their system, the rules as to new trials should be essentially the same in equity as at law. This view finds some support in a few other cases in this country. But the cases abound in the books which decide that a more liberal discretion is exercised in granting new trials by courts in chancery than by courts at law. The reason of the distinction, as commonly given, is well stated in *Patterson* v. *Ackerson*, 1 Edw. Ch. R. 102, where it is said: "This arises from the consideration that, after all, the responsibility of the decision rests upon the judge in equity; the issue being ancillary to his decision for the purpose of informing his conscience as to doubtful facts; and therefore his conscience must be satisfied before he can proceed to base a decree upon the finding of a jury." It is palpable, we think, that the reservation to the court of a larger discretion in cases in equity than in cases at law is necessary, in view of the nature of the questions that fall within the equitable jurisdiction. The rules and principles indicated herein are more fully, but substantially in the same way, stated in Daniell's Ch. Pr. & Pl., under the head of Feigned Issues; and in Barbour's Ch. Pr., Book 2, c. 3, as well as by text writers generally, and concurred in by many cases, a few of which are

referred to. *Warden of St. Pauls* v. *Morris*, 9 Ves. 155. *Goodyear* v. *Rubber Co.*, 2 Cliff. 365. *Basey* v. *Gallagher*, 20 Wall. 680. *Garsed* v. *Beale*, 92 U. S. 684. *Johnson* v. *Harmon*, 94 U. S. 378. *Apthorp* v. *Comstock*, 2 Paige, 482.

The respondent contends that the verdict should be entirely disregarded by the court and the case be decided without the aid of a jury upon the bill, answer and proof. It appears from what has already been said, and it is established by the authorities above and below cited, that the court has the power to do so. The verdict advises but does not control the opinion of the court of chancery. It is a matter of evidence, designed to aid the chancellor, but he is not concluded by it. It is, however, the general (not universal) rule to either accept the verdict as binding or set it aside. It would be an extreme case to authorize a contrary proceeding. This court has the power, in an action of law, to set aside as many verdicts as may be rendered, when unsupported by the evidence, and certainly the power lies in the court, sitting in equity, to take to itself as a last resort the control and final decision of a case in equity where the furtherance of justice and the rights of parties plainly demand it, notwithstanding the result reached may amount to an overruling of the findings in the same case by a jury. More especially is this so, since, under our statutory provision allowing a jury trial in cases generally, many questions may be submitted to a jury which could be as well or better appreciated and determined by the court. For constitutional reasons, the Massachusetts court is debarred from the exercise of such a power, (*Franklin* v. *Green*, 2 Allen, 519,) and a few other states for one or another reason concur in the same view. But the great current of authority is the other way. Professor Greenleaf declares the rule thus : " According to the doctrine of equity, the facts are found by the chancellor, and, of course, all the subordinate means of ascertaining them, and verdicts among the rest, are used only for his information, and are not imperatively to govern and control his judgment." 3 Greenl. Ev., §§ 261, 337. We do not, however, fully concur with the learned author that this right of the chancellor may be regarded as taken away in a state where the statute law allows a jury trial in cases of equity as a matter of

right. *Id.*, § 262. While for such reason the power might be more sparingly and cautiously used, we are impressed with the belief that extreme cases would be more likely to arise, under the operation of the law, requiring such a discretionary power on the part of the court to be exercised. Story Eq. Jur., § 1479. *Silsby* v. *Foote*, 20 How. 385. See authorities cited *supra.*

The same rule that applies to findings of fact by a jury was observed when the chancellor in the English practice called upon the law judges for their opinion upon a question of law. The chancellor might regard or disregard the opinion according as he was convinced by it or not. In the case of *Howard* v. *Duke of Norfolk*, 3 Chan. Cas. 28, Lord Nottingham said: " As to the learned judges that assisted me at the hearing, the decree is mine, and the oath that the decree is made upon is mine ; theirs is but learned advice and opinion. . . It is my decree; I must be saved by my own faith, and must not decree against my own conscience and reason." Much interesting matter touching this relation of chancellor with the common law judges and courts is found in Ram's Leg. Judg. (Townshend ed.) 371.

Upon the whole case, including the newly discovered evidence, after careful examination and consideration, we do not feel clear that the verdict should stand, and would be better satisfied to have the issues again submitted to a jury. We see no occasion to state the grounds of objection to the verdict in detail. We think the points of dispute may be seen and appreciated better at a second trial than they were before. The evidence will be more full and complete.

*New trial granted.*

APPLETON, C. J., BARROWS, VIRGIN and LIBBEY, JJ., concurred.